UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

David Lent,

                              Plaintiff,                  **Hon. Hugh B. Scott**

                                                            06CV569S

                              v.                                **Decision & Order**
                                                                   **and**
                                                               **Amended**
                                                    **Scheduling Order**

Signature Truck Systems, Inc.
Muncie Power Products, Inc.,
Base Engineering, Inc.,

                              Defendants.

_____

     Before the Court are the following motions: plaintiff's motions for leave to take additional depositions (Docket Nos. 117, 119); plaintiff's motion to compel certain non-party depositions and the production of documents (Docket No. 118); defendant Signature Truck Systems, Inc. ("Signature") motion to preclude the plaintiff's third response to Signature's First Set of Interrogatories (Docket No. 130); and plaintiff's motion to extend discovery and modify the scheduling order (Docket No. 132).

## Background

     The plaintiff, David Lent ("Lent") brought this action in New York State Supreme Court, Erie County, against Signature, Muncie Power Products, Inc. ("Muncie") and Base Engineering,

Inc. ("Base"). Lent alleges that on December 10, 2003, he was employed by Ferrellgas Partners, L.P. ("Ferrellgas").[1] The plaintiff alleges that he was severely injured while making a delivery of propane gas to a Ferrellgas customer on Ball Road in the Village of Forrestville, New York. Lent alleges that the power-take-off system ("PTO") engaged unexpectedly and entangled both of his arms. (Docket No. 1-2 at ¶ 4). The plaintiff alleges that the propane delivery vehicle Lent was operating was manufactured by Signature (Docket No. 1-2 at ¶ 5); the PTO system was designed and manufactured by Muncie (Docket No. 1-2 at ¶ 32); and a radio remote control unit used to engage the PTO was designed and manufactured by Base (Docket No. 1-2 at ¶ 57).

## Discussion

**Motions To Take Additional Depositions & Other Discovery Issues**

The plaintiff seeks to conduct five additional depositions, including depositions of non-party witnesses from Parker Hannefin, Chelsea Division (a manufacturer of PTO systems in competition with Muncie)(referred to herein as "Chelsea"). The individuals proposed to be deposed include Jason Swatek (the product manager of Chelsea PTO's); Brian Rang (chief engineer for Chelsea PTO's); the chief legal officer of Chelsea; and the risk manager for Chelsea. Lastly, Lent also seeks to depose Richard Fernandez, an engineer and former Muncie employee. (Docket No. 117 at ¶ 5). Lent also seeks to take the non-party depositions of Lee Ostrom (of Ostrom Enterprises, Inc. ["Ostrom"]); Chris Schutt (of R&W Truck Services, Inc. ["R&W"]); and Philip Hordusky (and employee of third-party defendant Ferrellgas). (Docket No. 119 at ¶ 5).

---

[1] Each of the original defendants have filed a third-party complaint Ferrellgas in this case (Docket Nos. 15, 26 and 29).

Lent alleges that he served subpoenas on Swatek and Rang on November 6, 2009, and Chelsea's Chief Legal Officer and Chelsea's Risk Manager on November 11, 2009, scheduling the depositions to take place on December 9, 2009 and December 14, 2009, respectively. (Docket No. 118 at ¶ 7). On November 24, 2009, Specialty Risk Services ("SRS"), third party claim administrator for Chelsea, faxed a letter to Lent objecting to the subpoenas on the grounds that they requested testimony and documents that allegedly encompassed matters that are proprietary and trade secret. (Docket No. 118 at ¶8).

Number of Depositions

The plaintiff asserts that the number of depositions taken in this case has already exceeded the limit proscribed in Rule 30(a)(2)(A). (Docket No. 119 at ¶ 7).[2] In any event, pursuant to Rules 26 and 30 of the Federal Rules of Civil Procedure, the factors to be considered when resolving a request to expand the ten-deposition limit imposed by Rule 30(a)(2)(A), include whether (1) the proposed discovery is "unreasonably cumulative or duplicative, or ... obtainable from some other source that is more convenient, less burdensome, or less expensive," (2) the party seeking the proposed discovery has not previously "had ample opportunity by discovery in the action to obtain the information sought," and (3) "the burden or expense of the proposed discovery [does not] outweigh[ ] its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the

---

[2] Muncie asserts that Lent has taken more than 20 depositions in this case. (Docket No. 127 at ¶ 3).

litigation, and the importance of the proposed discovery in resolving the issues." See Fed.R.Civ.P. 30(a)(2)(A), 26(b)(2)(C). Generally, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense [.]" Fed.R.Civ.P. 26(b)(1). "Although not unlimited, relevance, for purposes of discovery, is an extremely broad concept." Condit v. Dunne, 225 F.R.D. 100, 105 (S.D.N.Y.2004); see also Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978); Convolve, Inc. v. Compaq Computer Corp., 223 F.R.D. 162, 167 (S.D.N.Y.2004); Melendez v. Greiner, 2003 WL 22434101, at *1 (S.D.N.Y. 2003). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1). The burden of demonstrating relevance is on the party seeking discovery. See Mandell v. Maxon Co., 2007 WL 3022552, at *1 (S.D.N.Y. 2007).

The plaintiff asserts that the issues in this case are complex, involving three separate product liability claims against three corporate entities. Lent states that the proposed additional discovery would not result in duplicative discovery, but instead would focus on the fact that Chelsea included explicit warnings in its installation and owners manuals relating to unwanted shaft rotation; that Chelsea conducted testing on a PTO virtually identical to that produced by Muncie and found that the unwanted shaft rotation generated sufficient torque to cause serious injury and even death (Lent alleges that Muncie denies that sufficient torque would be generated); that prior to 2001, Chelsea was aware of numerous injuries caused by unguarded PTO shafts (Lent alleges that Muncie and Signature deny being aware of any such injuries). (Docket No. 117 at ¶ 13). The plaintiff asserts that the deposition of Fernandez will focus on the fact that while he was employed by Muncie, Fernandez obtained a patent for a drag brake which

4

is an integral part of the Muncie PTO. Lent argues that Fernandez' testimony will clarify the extent to which the drag brake was successful in dealing with unwanted shaft rotation, and the amount of torque generated from such rotation. (Docket No. 117 at ¶¶ 14-16). The plaintiff asserts that the documents and depositions of Ostrom and Schutt are necessary to confirm material repairs and replacement parts made to the truck involved in the incident, and that such repairs did not materially change the physical condition or operation of the truck. (Docket No. 119 at ¶ 14). The plaintiff seeks to take a second deposition of Hordusky to confirm that all material repairs of the truck were made by Ostrom and R&W. (Docket No. 119 at ¶ 15).

Muncie argues that the depositions of the four Chelsea witnesses would not yield any relevant evidence. (Docket No. 127 at page 3). According to Muncie, the warning stickers Muncie used were adequate and similar to those used by Chelsea. (Docket No. 127 at ¶¶ 6-7). Moreover, Muncie asserts that the plaintiff testified that he did not remember seeing any warnings in the manuals he read about the Muncie PTO. (Docket No. 127 at ¶ 8). Muncie also argues that the plaintiff's theory of liability, based upon the concept of unwanted rotation of the PTO, occurs "vary rarely" and was contrary to the evidence. (Docket No. 127 at ¶ 9). Whether or not the plaintiff's theory of liability will suffice to meet its burden in this case is a question of fact for the jury. The adequacy of Muncie's warning stickers, their content, location and placement on the equipment and in the documentation are all questions to be resolved by the trier of fact. While making no findings regarding admissibility, what other PTO manufacturers were doing with respect to such warnings may be relevant to the reasonableness of Muncie's conduct in this case. Similarly, testimony by Chelsea employees regarding the awareness of injuries caused by unwanted rotation of the PTO may be relevant to what was commonly known to those

5

in that industry. With respect to Fernandez, Muncie argues that the relevance of any testimony he might give does not justify the cost of the deposition. (Docket No. 127 at page 11). This assertion is based upon Muncie's argument that the unwanted shaft rotation theory is a "red herring" because the drag brake (apparently designed by Fernandez) was installed on the truck involved in this accident and would have prevented any unwanted rotation. (Docket No. 127 at ¶25). The plaintiff's theory disputes this assertion, and the plaintiff proposes to depose Fernandez for the very purpose of exploring the effectiveness of the drag brake in preventing unwanted rotation. The effectiveness of the drag brake in preventing rotation is a question that must be resolved by the trier of fact in this case. Again, making no findings as to admissibility at trial, Fernandez' testimony is relevant to that question. The defendants also object to the further deposition of Hordusky in this matter. The plaintiff acknowledges that Hordusky has been deposed previously in this matter, [3] but asserts that further testimony is necessary to confirm the records provided by Ferrellgas on November 19, 2009 and to document all repairs and maintenance on the truck from January 2007 to November 24, 2009. (Docket No. 128 at ¶ 34-35).[4]

Once relevance has been shown, it is up to the responding party to justify curtailing discovery. Condit, 225 F.R.D. at 106; Melendez, 2003 WL 22434101, at *1. "[T]he court must

---

[3] The plaintiff asserts that this would constitute a "second" deposition of Hordusky (Docket No. 119 at ¶ 15), while the defendants assert that Hordusky has already been deposed twice in this case. (Docket No. 123 at ¶¶ 13; Docket No. 124 at ¶ 30).

[4] In this regard, the plaintiff has stated that he would forego a further deposition of Hordusky in exchange for an affidavit from Hordusky stating that the condition of the truck on November 24, 2009 was materially the same as it was on December 10, 2003 (except for the changes already detailed in Hordusky's prior affidavit). (Docket No. 128 at ¶ 36). The parties are encouraged to work to resolve this matter in such a fashion.

limit the frequency or extent of discovery" when:

> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>
> (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Fed.R.Civ.P. 26(b)(2)(C). Similarly, a subpoena is subject to being quashed or modified if, among other things, it "subjects a person to undue burden," Fed.R.Civ.P. 45(c)(3)(A)(iv), or requires "disclosing a trade secret or other confidential, research, development, or commercial information." Fed.R.Civ.P. 45(c)(3)(B)(i). In assessing these considerations, "special weight [should be given] to the burden on non-parties of producing documents to parties involved in litigation." Travelers Indemnity Co. v. Metropolitan Life Insurance Co., 228 F.R.D. 111, 113 (D.Conn.2005); see also Fears v. Wilhelmina Model Agency, Inc., 2004 WL 719185, at *1 (S.D.N.Y. 2004) ("[T]he Court should be particularly sensitive to weighing the probative value of the information sought against the burden of production on [a] nonparty."); Concord Boat Corp. v. Brunswick Corp., 169 F.R.D. 44, 49 (S.D.N.Y.1996) ("[T]he status of a witness as a nonparty to the underlying litigation 'entitles [the witness] to consideration regarding expense and inconvenience.' " (alteration in original)). Of course, "discovery should not simply be denied on the ground that the person or entity from whom it is sought is not a party to the action.... A better approach is for the court to take steps to relieve a nonparty of the burden of compliance

even when such accommodations might not be provided to a party." Wertheim Schroder & Co. v. Avon Products, Inc., 1995 WL 6259, at *6 (S.D.N.Y. 1995).

An evaluation of undue burden requires the court to weigh the burden to the subpoenaed party against the value of the information to the serving party. Whether a subpoena imposes an "undue burden" depends upon "such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." Travelers Indemnity Co., 228 F.R.D. at 113 (quoting United States v. International Business Machines Corp., 83 F.R.D. 97, 104 (S.D.N.Y.1979)); accord Bridgeport Music Inc. v. UMG Recordings, Inc., 2007 WL 4410405, at *2 (S.D.N.Y. 2007); Night Hawk Ltd. v. Briarpatch Ltd., 2003 WL 23018833, at *8 (S.D.N.Y. 2003).

In light of the complex issues and multiple defendants in this case, the necessity to take additional depositions is warranted. The proposed discovery is not "unreasonably cumulative or duplicative." Further, the Court notes that much of the sought after discovery relates to the plaintiff's theory of liability which was discerned in the later stages of the discovery period (and was, itself, the subject of various recent discovery motions) (Docket Nos. 97 and 106). Finally, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues, the burden and expense of the proposed discovery is not outweighed by its likely benefit.

This case has been proceeding for an extended time. Although the Court will permit limited further discovery to take place, such discovery must be completed in an expedited

8

manner, as addressed in the modified scheduling order below.

Out of District Non-Party Depositions

Notwithstanding the above ruling as to the plaintiff exceeding the deposition limit in Rule 30, Chelsea challenges the validity of the subpoenas served upon its employees in this case inasmuch as they were issued by the Western District of New York but require appearance in Mississippi and Ohio in contravention of Rule 45(a)(2)(B). It appears that the subpoenas served upon the Chelsea employees are invalid on their face. McNerney v. Archer Daniels Midland Co., 164 F.R.D. 584 (W.D.N.Y. 1995)(The subpoena appears to be invalid on its face; it was issued out of the Western District of New York, rather than a federal court in Tennessee where production and inspection was to be made.); Hallamore Corp. v. Capco Steel Corp., 259 F.R.D. 76 (D.Del.,2009)(Rule 45(a)(2)(B) requires that a subpoena for attendance at a deposition issue from the district where the deposition is to be taken. A subpoena for production of documents must issue from the district where the documents are located. When a subpoena demands the production of documents in addition to attendance at a deposition, the subpoena may issue from the court of the district where the deposition is to take place.); City of St. Petersburg v. Total Containment, Inc., 2008 WL 1995298 at *4 (E.D.Pa. May 5, 2008) ("the geographic limitation in Rule 45(a)(2)(C) relates principally to the location of the documents to be produced, rather than the specified location on the subpoena" (original emphasis)).  Thus, the Chelsea witnesses need not appear for deposition pursuant to the subpoenas issued out of the Western District of New York.[5]

---

[5] Chelsea also argues that the motion to compel the depositions of the Chelsea employees should be denied because the subpoenas seek trade secret and proprietary information. (Docket No. 122 at ¶ 3). Chelsea does not provide any specificity with respect to what categories

**Motion to Preclude Interrogatory Responses**

Signature moves to preclude the plaintiff's Third Response to Signature's First Set of Interrogatories ("Plaintiff's Third Response"). (Docket No. 130). Signature asserts that the Plaintiff's Third Response asserts numerous "new" theories of liability which were not related to the discovery authorized in the Court's October 14, 2009 Order. (Docket No. 130-2 at ¶ 5).[6] Signature identifies 16 "new" claims allegedly contained in the Plaintiff's Third Response. (Docket No. 130-2 at pages 3-5). The plaintiff asserts that the new information contained in the Plaintiff's Third Response is either based on information learned as a result of the November 24, 2009 inspection of the truck, or had been previously raised by the plaintiff. (Docket No. 136 at ¶ 12). For example, one of the alleged "new" claims Signature asserts was added by Lent in the Plaintiff's Third Response was language to the effect that the "PTO shaft should have been guarded if the propane delivery system did not have a direct pump or a hydraulically-driven

---

of information sought by the plaintiff constitute trade secret or proprietary information. As a general matter, a litigant can subpoena information from a nonparty competitor if that information is relevant to the litigation; this includes proprietary information or trade secrets if an appropriate protective order can be fashioned. R.J. Reynolds Tobacco v. Philip Morris, Inc., 29 Fed.Appx. 880 (3d. Cir. 2002.). Finally, Chelsea argues that Lent seeks to make Chelsea employees his unretained and uncompensated expert witnesses. (Docket No. 122 at ¶¶ 12-13). Chelsea does not provide any authority in support of this proposition. The exact scope of the plaintiff's intended inquiry at the proposed depositions is not set forth in the record. It appears that the plaintiff does seek to obtain factual information as to the warnings used by Chelsea; the test results Chelsea obtained as to unwanted rotation on the PTO; and the awareness of injuries caused by unwanted rotation by the PTO. This factual testimony does not constitute expert testimony. If this information were to be admitted at trial, the parties' respective experts could opine as to the significance of this evidence and its relevance to the equipment involved in this case.

[6] Signature had made a similar motion seeking to strike Lent's Second Response to Signature's First Set of Interrogatories. (Docket No. 130-2 at ¶ 5). That request was denied (Docket No. 115).

pumping system." (Docket No. 130-2 at page 4). However, Lent points out that he had previously included this assertion in the Plaintiff's Second Response to Signature's First Set of Interrogatories ("Plaintiff's Second Response") in his response to Interrogatory No. 7 ("The propane delivery system should have included a direct drive pump or a hydraulically-driven pumping system to avoid the need for a rotating PTO shaft. ... The PTO shaft must have been guarded/ shielded to prevent injury."). (See Docket No. 136, Exhibit G). Further, the plaintiff has demonstrated that many of the alleged "new" claims are related to information obtained as a result of the November 24, 2009 truck inspection. (Docket No. 136 at ¶28).

Federal Rule of Civil Procedure 26(e)(1) provides:

> A party who has made a disclosure under Rule 26(a)--or who has responded to an interrogatory, request for production, or request for admission--must supplement or correct its disclosure or response:
>
> (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or
>
> (B) as ordered by the court.

Signature has not demonstrated that it would be prejudiced by the supplementation of the plaintiff's interrogatories as set forth in the Plaintiff's Third Response. Indeed, as noted above, it appears that much of the information Signature objects to was either included in the plaintiff's prior interrogatory responses or related to the newly obtained discovery. The motion to preclude the Plaintiff's Third Response is denied.[7] Signature requests that it be allowed to take a further

---

[7] Signature requests that the Court direct Lent to further supplement his responses to their interrogatories to specify which ANSI standard the plaintiff claims Signature's warning decals were in violation of, and the manner of the alleged violation. (Docket No. 130-2 at ¶23).

deposition of the plaintiff as to the supplemental interrogatory responses. (Docket No. 130-2 at ¶24).  Much of the newly added material appears technical in nature, and thus, the plaintiff may not possess the knowledge base to provide testimony as to such.  Notwithstanding, Signature will be permitted to further depose the plaintiff, to the extent the plaintiff is competent to testify as to the newly added material.

**Amended Scheduling Order**

The plaintiff seeks to modify the scheduling order to conduct the above discussed discovery.  (Docket No. 132). The defendants oppose the extension of discovery.  (Docket No. 135). This case is more than three years old and the Court is reticent to extend discovery. However, the Court is again guided by the fact that the public interest is best served when cases are decided on the merits. AIG Managed Market Neutral Fund v. Askin Capital Management, L.P., 197 F.R.D. 104 (S.D.N.Y. 2000)(" It is unfortunate that this already complex and lengthy litigation may be protracted yet further. Under all the circumstances, however, a discretionary extension is warranted, and comports with the Second Circuit's clearly expressed preference that litigation disputes be resolved on the merits. See  Mejia v. Castle Hotel, Inc., 164 F.R.D. 343, 345 (S.D.N.Y.1996); Cody v. Mello, 59 F.3d 13, 15 (2d Cir.1995)").

The additional discovery to be conducted shall be limited to the depositions and related document discovery specifically addressed in the instant motions. In light of the above, the following dates shall apply:

---

The plaintiff is directed to provide such information to Signature within 15 days of the date of this Order.

1. This case has previously been referred to mediation. The parties are encouraged to continue mediation efforts to resolve this matter.

2. All remaining discovery in this matter shall be completed by **June 15, 2010**.

3. The plaintiff shall identify experts and provide written reports in compliance with Rule 26 no later than **July 15, 2010**; the defendants shall identify experts and provide written reports in compliance with Rule 26 no later than **August 16, 2010**. The third-party defendants shall identify experts and provide written reports in compliance with Rule 26 no later than **September 15, 2010**. All expert discovery shall be completed on or before **September 30, 2010.**

4. In the event settlement is not effectuated through mediation, dispositive motions, if any, shall be filed no later than **October 29, 2010**.

5. In the event no dispositive motions are filed, pretrial statements in strict compliance with Local Rule 16.1(d) shall be <u>filed and served</u> no later than **November 30, 2010**.

6. No extension of the above cutoff dates will be granted except upon written joint motion, filed prior to the cutoff date, showing good cause for the extension.

7. A <u>final pretrial conference</u> pursuant to Fed. R. Civ. P. Rule 16(d) and Local Rule 16.1(j) will be held on **December 16, 2010 at 9:00 a.m.** with Judge Skretny.

8. Trial is set to commence on **February 22, 2011 at 9:30 a.m.** before Judge Skretny.

Counsel's attention is directed to Fed. R. Civ. P. Rule 16(f) calling for sanctions in the event of failure to comply with any direction of this Court.

## Conclusion

The plaintiff's motions for leave to take additional depositions (Docket Nos. 117, 118, and 119) are granted in part and denied in part; Signature's motion to preclude the plaintiff's Third Response to Signature's First Set of Interrogatories (Docket No. 130) is denied; and plaintiff's motion to extend discovery and modify the scheduling order (Docket No. 132).

13

is granted.

>So Ordered.

_____          /s/ Hugh B. Scott
                                        United States Magistrate Judge
                                        Western District of New York

Buffalo, New York
April 26, 2010